**FIRST BANK OF TURLEY, Plaintiff,**

v.

**FIDELITY AND DEPOSIT INSURANCE COMPANY OF MARYLAND,**
**Defendant.**

**No. 85735.**

Supreme Court of Oklahoma.

Sept. 24, 1996.

Rehearing Denied Dec. 19, 1996.

Jerry Reed, Tulsa, and Joseph R. Farris, Jody R. Nathan, Feldman, Hall, Franden, Woodard & Farris, Tulsa, for Plaintiff.

Robert L. Magrini, John B. Hayes, Brigid F. Kennedy, Looney, Nichols, Johnson & Hayes, Oklahoma City, for Defendant.

OPALA, Justice.

The United States District Court for the Northern District of Oklahoma [certifying court] certified the following questions[1] in

---

**1.** The style of the case shown in the caption of this opinion is the same as that which appears on the order certifying the questions.

accordance with the provisions of the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq.:

(1) Once an insurance company has declined to defend its insured in a lawsuit, does the insured have any obligation to keep the insurance company advised of developments in the lawsuit, or [to supply] new information which may bear on the insurer's decision?

(2) Under Oklahoma law, does an insurance company have as a defense in a bad-faith case the "comparative bad faith" of the insured? and

(3) If "comparative bad faith" is an available defense, what is the effect of the defense (i.e. are damages barred or reduced), what are the elements of the defense, and is the insured's duty to deal in good faith a continuing one?

■ In answer to the first question, we hold that an insured's failure to give proper notice when demanding that the insurer defend the suit or an insured's giving of inadequate notice does not constitute actionable conduct either *ex contractu* or *ex delicto.* The omission or deficiency in notice-giving is to be treated as contractual nonperformance or misperformance of a policy condition, which the insurer may invoke as a defense. If the facts surrounding notice and its adequacy are in dispute, the issue is one for the trier. As for the case before us, we defer to the certifying court, as we must, to resolve the question whether the evidentiary materials in this suit may be regarded as tendering an issue of law because the material facts, which are undisputed, will support but a single inference. For a detailed explanation of our analysis of the first question see Part III, *infra.* We answer the *second* question in the *negative.* In response to the *third* question, we *hold* that the insured, who *fails,* in whole or in part, in its duty-triggering obligation that calls for notice to the insurer, which must include critical facts connected with the lawsuit to be defended, is not answerable in tort; the deficiency in the insured's notice may be interposed *as a defense* against the insurer's liability—i.e., as a *complete (in toto )* bar to *any* recovery—or, *if the facts so warrant,* against the quantum of the insured's recoverable loss (*pro tanto* defense).

## I
## THE ANATOMY OF THE FEDERAL–COURT LITIGATION

On September 28, 1988, Buel and Peggy Neece sued First Bank of Turley [Bank] for invasion of privacy. The Bank reported on October 7, 1988 this suit's filing to its insurer, Fidelity and Deposit Insurance Company of Maryland [F & D]. The Bank's president, Mikel Hoffman [Hoffman], provided the insurer with a "sequence of events" revealing that he had called the I.R.S. to report what he considered as a possible violation of law. Hoffman stated that although he was familiar with the pertinent privacy act provisions, he was uncertain as to what he was free to share with the authorities.

F & D denied coverage on January 23, 1989 by informing the Bank that it was not bound to provide a defense on the then-extant allegations. The insurer explained by letter that the Bank's submitted documentation demonstrates the insured's "willful and intentional" violation of the Neeces' statutory privacy rights, which conduct brings the suit beyond the coverage provided by the policy.

When deposed, Hoffman revealed (a) he was familiar with the Right to Financial Privacy Act, and (b) what he had disclosed to the I.R.S. about the Neeces' financial information he believed to fall within a statutory exception. *When it denied coverage, F & D was unaware of this deposition excerpt.*

J.R.F., one of the Bank's lawyers, wrote, on February 9, 1989, a letter to J.R., another lawyer for the Bank, stating that in his opinion F & D had *wrongfully denied* the Bank's claim and had misrepresented the parameters of its coverage, *but counseled the client not to recontact F & D as yet.*

The litigation between the Bank and the Neeces went forward. On September 30, 1992, J.R.F. requested F & D in writing to reevaluate its coverage position in the lawsuit, citing the pertinent policy provisions and providing legal reasons for a favorable decision. F & D's Tulsa lawyer then arranged to look at J.R.F.'s file in the *Neece* case. In course of this examination, F & D's lawyer *discovered* and *copied* J.R.F.'s February 9, 1989 letter to J.R.

F & D offered on January 29, 1993(a) to provide the requested defense under a reservation of rights and (b) to reimburse the Bank for *all fees and expenses reasonably incurred in its defense of the suit forward from the date of the Bank's request that the coverage be reexamined.*

The Bank declined F & D's offer since it did not include payment for defense expenses *incurred before the September 30, 1992* request for review. By letters dated February 10, 1993 and March 18, 1993, J.R.F. demanded that the insurer provide *full reimbursement* of *all past defense costs* or face litigation for bad-faith refusal to act. When the insurer stood on its earlier decision, the federal-court suit here under consideration followed.

F & D urges that the conduct of the Bank's lawyers calls for the application of the so-called "comparative bad faith" doctrine.[2] According to the insurer, the Bank should either be *barred* from *all* recovery or its actual damages be subject to *reduction.* The Bank counters that Oklahoma law does not recognize the insurer-invoked doctrine, and even if it did, the rule would not be applicable to the facts tendered by this case.

## II

## THE NATURE OF THIS COURT'S FUNCTION WHEN ANSWERING QUESTIONS FROM A FEDERAL COURT

While in answering the queries posed by a federal court the parameters of state-law

claims or defenses identified by the submitted questions may be tested, it is not this court's province to intrude (by its responses) upon the certifying court's decision-making process.[3] The latter court must be left entirely free to assess the impact of the answers and to *make its own appraisal* of the proof in the case before it.[4]

Because this action is not before us for decision, we refrain from applying, as we must, the declared state-law responses to the facts now known or to be elicited in the federal-court litigation either by evidence at trial or by acceptable probative substitutes (the so-called "evidentiary materials"), which are in use or will be used in the summary adjudication process.[5] The task of analyzing today's answers for their application to this case is hence deferred, as it must be, to the certifying court.

## III

## THE DUTY TO DEFEND

The *first question* calls for an analysis of the governing principles of contract law. The relationship between the insured and insurer is contractual in nature.[6] An insurer's duty to defend claims against its insured is an *ex contractu* obligation.[7] A liability insurance policy generally contains two basic duties—the duty to defend and the

---

2. For a fuller explanation of the California doctrine of comparative bad faith, see Part IV, *infra.*

3. *See* Uniform Laws Annotated, Uniform Certification of Questions of Law Act/Rule (1995); Goldschmidt, Certification of Questions of Law; Federalism in Practice, American Judicature Society (1994).

4. *See, e.g., Shebester v. Triple Crown Insurers,* 974 F.2d 135, 137 (10th Cir.1992).

5. *Schmidt v. United States,* Okl., 912 P.2d 871, 873 (1996); *Brown v. Ford,* Okl., 905 P.2d 223, 226 (1995); *Bonner v. Oklahoma Rock Corp.,* Okl., 863 P.2d 1176, 1178 n. 3 (1993); *Shebester v. Triple Crown Insurers,* Okl., 826 P.2d 603, 606 n. 4 (1992).

6. An insurance policy constitutes a contract. 36 O.S.1991 § 102; *Silver v. Slusher,* Okl., 770 P.2d

878, 883 (1988); *Christian v. Metropolitan Life Ins. Co.,* Okl., 566 P.2d 445, 448 (1977); 12 APPLEMAN, INSURANCE LAW & PRACTICE § 7004 at 34–56 (1981 & Supp.1995).

7. *Budget Rent A Car Systems, Inc. v. Taylor,* 626 So.2d 976, 978 (Fla.Dist.Ct.App.1993); *Ticor Title Ins. Co. Of California v. American Resources, Ltd.,* 859 F.2d 772, 774 (9th Cir.1988); *Presidential Hotel v. Canal Ins. Co.,* 188 Ga.App. 609, 373 S.E.2d 671, 672 (1988); *Drake Ins. Co. Of New York v. Carroll County Sheriff's Dept.,* 427 N.E.2d 1153, 1155 (Ind.Ct.App.1981); *Schiebout v. Citizens Ins. Co. Of America,* 140 Mich.App. 804, 366 N.W.2d 45, 49 (1985), affirmed *Powers v. Detroit Auto. Inter–Insurance Exchange,* 427 Mich. 602, 398 N.W.2d 411 (1986); *Ehrlich by Williams v. Aetna Cas. & Sur. Co.,* 95 A.D.2d 936, 463 N.Y.S.2d 934, 936 (N.Y.App.Div.1983); 14 COUCH ON INSURANCE 2d (Rev ed) § 51:35 (1982); 7C

duty to indemnify its insured.[8] The insurer's primary duty is to provide indemnity for loss or to pay a specified amount upon determinable contingencies.[9] The duty to defend is separate from, and broader than, the duty to indemnify,[10] but the insurer's obligation is not unlimited. The defense duty is measured by the nature and kinds of risks covered [11] by the policy as well as by the *reasonable expectations of the insured.*[12] An insurer has a duty to defend an insured whenever it ascertains the presence of facts [13] that give rise to *the potential of liability* under the policy.[14] The insurer's defense duty is determined *on the basis of information* gleaned *from the petition (and other pleadings), from the insured* and *from other sources available to the insurer* [15] at the time the defense is demand-

APPLEMAN, INSURANCE LAW & PRACTICE § 4682 at 22 (Berdal ed.1979).

8. The duty to defend relates to coverage, which is "a matter of contract interpretation as it relates to a set of facts," and not liability, which is "concerned with an analysis of the applicable law to the same set of facts." 7C APPLEMAN, *supra* note 7, § 4682 at 22; *First Ins. Co. of Hawaii, Inc. v. State of Hawaii,* 66 Haw. 413, 665 P.2d 648, 651–652 (1983).

9. See 36 O.S. 102, *supra* note 6; *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 684 (1983) (uninsured motorist coverage is a first-party indemnity paid by the insurer for a specified loss); 1 COUCH ON INSURANCE 2d (Rev ed) § 1:5 at 10, § 1.9 at 15 (1984); *see also* 12 APPLEMAN, *supra* note 6, § 7001 at 6.

10. The broader scope of the insurer's duty to defend is evidenced by the ordinary policy terms that bind the insurer to defend "even if any of the allegations of the suit are groundless, false, or fraudulent." 7C APPLEMAN, *supra* note 7, § 4682 at 23. *See also Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.,* 832 F.2d 1037, 1042 (7th Cir.1987); *Maneikis v. St. Paul Ins. Co. of Illinois,* 655 F.2d 818, 822 (7th Cir.1981); *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1184 (7th Cir.1980), cert. denied, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *First Insurance v. Continental Cas. Co.,* 466 F.2d 807, 811 (9th Cir.1972); *Donnelly v. Transp. Ins. Co.,* 589 F.2d 761, 765 (4th Cir.1978); *Ehrlich, supra* note 7 463 N.Y.S.2d at 936–937; *Conway v. Country Casualty Ins. Co.,* 92 Ill.2d 388, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247 (1982); *LaRotunda v. Royal Globe Ins. Co.,* 87 Ill.App.3d 446, 42 Ill.Dec. 219, 224, 408 N.E.2d 928, 933 (1980); *CNA Cas. of Cal. v. Seaboard Sur. Co.,* 176 Cal.App.3d 598, 222 Cal.Rptr. 276, 278–279 (1986); *Conner v. Transamerica Ins. Co.,* Okl., 496 P.2d 770, 774–775 (1972); *First Ins. Co. of Hawaii, supra* note 8 665 P.2d at 651. *But cf. U.S.F. & G. v. Briscoe,* 205 Okl. 618, 239 P.2d 754, 758 (1952), where the court held that an insurer is not obligated to defend a groundless suit when it would not be liable under its policy for any recovery that may be adjudged against the insured. There, the insurer's duty to defend was *expressly limited* to a suit for damages caused by accident.

11. The nature and kinds of risks covered by a policy limit the insurer's duty to defend. *Safeco*

*Title Ins. Co. v. Moskopoulos,* 116 Cal.App.3d 658, 172 Cal.Rptr. 248, 252 (1981); *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.,* 659 F.Supp. 1075, 1076 (N.D.Cal.1986); *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fidelity & Guar. Co.,* 714 P.2d 1143, 1146 (Utah 1986).

12. *Conner, supra* note 10 at 774 (quoting from *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal. Rptr. 104, 108, 419 P.2d 168, 172 (1966)); *Centennial Ins. Co. v. Applied Health Care Systems, Inc.,* 710 F.2d 1288, 1292 (7th Cir.1983); *Gardner v. Romano,* 688 F.Supp. 489, 493 (E.D.Wis. 1988). Under the "reasonable expectations" doctrine, if the insurer or its agent creates in the insured a *reasonable expectation of coverage* which is not supported by policy language, the expectation will prevail over the language of the policy. *Max True Plastering Co. v. U.S. Fidelity and Guaranty Co.,* Okl., 912 P.2d 861, 863–870 (1996).

13. The duty to defend should *focus upon the facts* rather than upon the complaint's allegations, which may or may not control the ultimate determination of liability. *Texaco, Inc. v. Hartford Acc. and Indemnity,* 453 F.Supp. 1109, 1113 (E.D.Okl.1978).

14. The phrase "potentially covered" means that "the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the *possibility of a recovery* under the policy; there *need not be a probability of recovery.*" 7C APPLEMAN, *supra* note 7, § 4683.01 at 67.

15. The duty to defend cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible.* *Harrow Products, Inc. v. Liberty Mutual Ins. Co.,* 833 F.Supp. 1239, 1246 (W.D.Mich.1993); *Allstate Ins. Co. v. Gilbert,* 852 F.2d 449, 453 (9th Cir.1988); *Seaboard, supra* note 10 222 Cal.Rptr. at 278–279; *Waste Management v. Peerless Ins. Co.,* 315 N.C. 688, 340 S.E.2d 374, 378 (1986); *Texaco, supra* note 13 at 1113; *Gray, supra* note 12, 54 Cal.Rptr. at 112, 419 P.2d at 176; *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636, 641 (1981); *Shepard Marine Const. Co. v. Maryland Cas. Co.,* 73 Mich.App. 62, 250 N.W.2d 541, 542 (1977); *Spruill Motors, Inc. v. Universal Under. Ins. Co.,* 212 Kan. 681, 512 P.2d 403, 407

ed (or tendered) rather than by the outcome of the third-party action.[16]

An insurer ordinarily has no duty to defend an insured absent a request to provide a defense,[17] which act serves to trigger the insurer's performance under the contract.[18] It is the insured's sole duty to give its insurer timely and adequate notice of a third-party claim [19] to aid the insurer in the discovery of facts bearing on coverage.

Once an insurer receives notice of a claim and proof of loss, the insurer should evaluate the matter and make a reasonable investigation to determine whether a potential for coverage exists.[20] An insured in turn has an obligation to cooperate with the insurer, which is both contractual [21] and implied in law.[22] An insurer who disputes the insured's demand to defend has three options. It can (1) seek declaratory relief that would define the insurer's rights and obligations; [23] (2)

(1973); see also C.T. Drechsler, Annot., Allegations in Third Person's Action Against Insured as Determining [the] Liability Insurer's Duty to Defend, 50 A.L.R.2d § 20, at 500–01, for case law holding that the insurer, in determining its duty to defend, "should not look exclusively to the allegations of the complaint or petition" in the third-party action, but should be "guided by the actual facts of which it has knowledge". See also 14 COUCH ON INSURANCE 2d, § 51:47 at 540 (1982); 7 APPLEMAN, INSURANCE LAW AND PRACTICE § 4684.01 at 95 (1979) (the author notes that "even though the pleadings do not show coverage, where known or reasonably ascertainable facts become available that show coverage the duty to defend devolves upon the insurer")(emphasis added).

16. An insurer generally must defend an action in which damages that are potentially within the policy's coverage are sought, even though coverage may ultimately not be afforded. Montrose Chemical Corp. of Cal. v. Superior Court, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 474, 861 P.2d 1153, 1160 (1993); Seaboard, supra note 10 222 Cal.Rptr. at 278–279; Tews, supra note 10 at 1042; 7C APPLEMAN, supra note 7, § 4683.01 at 67; 14 COUCH ON INSURANCE 2d § 51:48 (1982).

17. Washington v. Federal Kemper Ins. Co., 60 Md.App. 288, 482 A.2d 503, 507 (1984); Celina Mut. Ins. Co. v. Citizens Ins. Co. of America, 133 Mich.App. 655, 349 N.W.2d 547, 551 (1984); 14 COUCH ON INSURANCE 2d § 51:35 at 444 (1982).

18. Other duty-triggering conduct is the insured's contractual obligation to submit a notice of claim and proof of loss. Paulfrey v. Blue Chip Stamps, 150 Cal.App.3d 187, 197 Cal.Rptr. 501, 508 (1984).

19. In Great American Ins. Co. v. McKemie, 244 Ga. 84, 259 S.E.2d 39, 40 (1979), the court noted that the correctness of an insurer's decision to (or not) defend cannot be determined by "later-revealed facts" of which the insurer had no knowledge or notice. This is so, the court observed, because, even if an insurer justifiably refused to defend a case based on the information it had at the outset, it would have to monitor the case throughout to be sure that its duty did not arise later. This burden, the court opined, "would be intolerable." In Leader National Ins.

Co. v. Smith, 177 Ga.App. 267, 339 S.E.2d 321, 327 (1986), the court (relying on McKemie, supra) noted that "the correctness of an insurer's decision to defend or not cannot be determined by 'later-revealed facts' of which the insurer has no knowledge or notice." According to Leader, the court's focus should be on whether the insurer was given "adequate notice" of possible insurance liability and then chose not to defend. Id. 339 S.E.2d at 327.

20. Buzzard v. Farmers Ins. Co., Okl., 824 P.2d 1105, 1109 (1992); ; Paulfrey, supra note 18 197 Cal.Rptr. at 507–508; American States Ins. Co. v. Aetna Life & Cas. Co., 177 Ind.App. 299, 379 N.E.2d 510, 518 (1978); Patrons Mut. Ins. Ass'n v. Harmon, 240 Kan. 707, 732 P.2d 741, 744 (1987)(an insurer must make a good-faith determination, based on all the facts known to it, or which by reasonable efforts could be discovered by it, that there is no potential liability under the policy); Deseret, supra note 11 at 1147; Health Care and Retirement Corp. of America v. St. Paul Fire & Marine Ins. Co., 621 F.Supp. 155, 162 (S.D.W.Va.1985)(the opinion notes that in ascertaining the insurer's duty to defend, some courts have imposed a duty of reasonable investigation).

21. Most insurance policies contain provisions requiring the insured to "cooperate" with the insurer in investigation of any claim under the policy. Failure to do so gives rise to a contract defense, but does not necessarily bar a bad-faith action against the carrier. 8 APPLEMAN, INSURANCE LAW & PRACTICE § 4774 at 231–234 (1981); see, e.g., Waste Management Inc. v. International Surplus Lines Ins. Co., 144 Ill.2d 178, 161 Ill.Dec. 774, 780, 579 N.E.2d 322, 328 (1991), where the court opines that an insured's duty to cooperate does not end with the termination of an underlying lawsuit, but rather continues for as long as the insured seeks to enforce its terms.

22. Shebester, supra note 5 at 610–611.

23. The first option is not available in the Oklahoma state-court system. See the exclusionary provisions in 12 O.S.1991 § 1651. If jurisdiction lies, declaratory relief may be invoked in the federal-court system.

An action for declaratory relief is appropriate to resolve coverage disputes between the insurer

defend the insured under a reservation of rights, or (3) refuse to take any action at the peril of being later found in breach ·of its duty to defend.[24]

■■■ The insurer's liability for breach of its defense duty by refusal to provide a defense is measured by the facts that were *known and knowable*[25]—by what the insurer knows or by what the insurer was capable of discovering itself—at the time the insured's request was tendered.

■■■ As part of its notice-giving obligation, the insured must provide the insurer with facts material to its ascertainment of the duty to defend. A breach of the insured's obligation to give notice of *critical post-denial developments* may *modify, excuse or defeat* the insurer's performance under the contract. If the insured's performance of its contractual duty is deficient, the court must

focus on whether (1) the *initial notice* was adequate to put the insurer on notice of *potential liability* under the policy, (2) the nondisclosed (or later-revealed) facts were so *material* that they should have been reported, (3) the notice was sufficient for the insurer's investigation and discovery of all the facts relative to its *potential liability;* and (4) the insurer's reasonable investigation could have uncovered the excluded information. None of these issues, if contested, can be resolved as a matter of law. *Each is to be treated as a disputed fact for the trier.*

■■■ If a duty to defend was the insured's due under the insurance contract, an insurer's refusal to defend was in *breach of that obligation,* which renders the insurer liable for all reasonable expenses incurred by an insured in defense of a third-party action.[26] The insurance contract contemplates

and insured. *See,* for example, two cases in which federal-court questions were answered by supplying controlling Oklahoma law. *Safeco Ins. Co. of America v. Sanders,* Okl., 803 P.2d 688 (1990)(UM carrier brought declaratory judgment action against insureds for determination of nonliability); *Ohio Cas. Ins. Co. v. Todd,* Okl., 813 P.2d 508 (1991)(insurer pressed for relief declaring that it had no duty to defend the insured). *See also Wilton v. Seven Falls Company,* — U.S. —, —–—, 115 S.Ct. 2137, 2140–2141, 132 L.Ed.2d 214 (1995)(reaffirming the discretionary character of declaratory jurisdiction of federal courts); *Horace Mann Ins. Co. v. Johnson By and Through Johnson,* 758 F.Supp. 1456, 1458–1459 (W.D.Okl.1991), reversed on other grounds, 953 F.2d 575 (10th Cir.1991); *Paulfrey, supra* note 18 197 Cal.Rptr. at 508 (insurer sought judgment determining its duty to defend); *Morris v. Farmers Ins. Exchange,* 771 P.2d 1206, 1208 (Wyo.. 1989); *Firemen's Ins. v. Petrie,* 10 Ohio Misc. 188, 226 N.E.2d 808 (Ohio Ct.Com.Pl.1966)(insurer pressed for judgment declaring its nonliability to the insured who failed timely to submit proof of loss); 8D APPLEMAN, INSURANCE LAW & PRACTICE § 5112.25 at 22 (1981).

24. *See, e.g., Tews, supra* note 10 at 1042; *Insurance Corp. of Ireland Ltd. v. Board of Trustees of S. Ill. Univ.,* 937 F.2d 331, 337 (7th Cir.1991); *Maneikis v. St. Paul Ins. Co. of Illinois,* 655 F.2d 818, 821 (7th Cir.1981); *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.,* 724 F.Supp. 1173, 1176 (M.D.N.Carol.1989); *St. Paul Ins. Co. v. Bischoff,* 150 Mich.App. 609, 389 N.W.2d 443, 444–445 (1986); *Detroit Edison Co. v. Michigan Mutual Ins. Co.,* 102 Mich.App. 136, 301 N.W.2d 832, 836 (1980)(the insurer has two choices when it is asked to defend an action brought against its insured—it can undertake the defense with notice to the insured that it is reserving the

right to challenge its liability on the policy or it can repudiate liability, refuse to defend and take its chances that there will be a showing of no coverage for the insured's liability).

25. *Gray v. Holman,* Okl., 909 P.2d 776, 780 (1995)(the insurer's refusal to settle the plaintiff's claim is actionable if it can be established that, when the insurer's actions are measured by the facts then *known and knowable* to it, its failure to recognize the plaintiff's insurable interest in the covered property destroyed by fire was in bad faith); *Conti v. Republic Underwriters Ins. Co.,* Okl., 782 P.2d 1357, 1362 (1989)(the insurer's actions in withholding payment must be assessed in light of all facts *known and knowable* concerning the claim *at the time plaintiff requested the company to perform its contractual obligation); Buzzard v. McDanel,* Okl., 736 P.2d 157, 159 (1987)(insurer's handling of an insurance claim must be assessed in light of all the facts *known and knowable* about the claim at the time it was requested to perform its contractual obligations).

26. If the insurer has breached its duty to defend, it, like any other party to a contract who has failed to perform, becomes liable for all foreseeable damages that flow from the breach. *Stockdale v. Jamison,* 416 Mich. 217, 330 N.W.2d 389, 392 (1982). An insurer who wrongfully refuses to defend on the ground that the action was not within the coverage of the policy is liable for reasonable counsel fees incurred by the insured in the defense of the underlying action. *Schiebout, supra* note 7 366 N.W.2d at 49; Annot., Consequences of Liability Insurer's Refusal to Assume Defense of Action Against Insured upon Ground That Claim upon Which Action Is Based Is Not Within Coverage of Policy, 49 A.L.R.2d 694 (1956).

*but one actionable breach* of an insurer's duty to defend. No action will lie against the insured for failure to give the insurer *adequate* notice of facts relative to coverage, even if the insurer could not secure them by discovery. Neither nonperformance of notice-giving duty nor misperformance generally presents an issue of law.[27] Whether the insured's notice is so defective as to amount to nonperformance of its notice-giving duty, or whether it is so deficient or inadequate as to excuse an insurer's duty to defend, entirely or during the time of the insured's misperformance, presents an issue of fact. As for this case, we leave for the certifying court to determine whether the alleged inadequacy of the insured's notice may be treated as a question of law because all the relevant facts, which are undisputed, support but a single inference.

Our analysis calls for the conclusion that in the scenario of this case there is but a single actionable breach, if any, by the insurer for its wrongful refusal to defend, and the correctness of the insurer's decision clearly depends on facts *known and knowable* at the time it was called upon to act. No further comment is deemed necessary to complete our answer to the first question.

## IV

### THE NATURE OF THE INSURER'S DEFENSE AGAINST A CLAIM FOR BAD–FAITH REFUSAL TO DEFEND WHEN IT IS BASED ON THE INSURED'S FAILURE TO GIVE NOTICE OF SIGNIFICANT POST–DENIAL INFORMATION

### The "Bad–Faith" Doctrine and its California Progeny—the "Comparative Bad–Faith" Defense and Reverse Bad–Faith Tort

We next consider whether the "comparative bad-faith" doctrine is available to the insurer as a defense against an insured's bad-faith claim for refusal to defend.[28]

■ California jurisprudence treats an insurer's bad-faith refusal to settle a claim as a tort.[29] We adopted the California concept in *Christian v. American Home Assur. Co.* [30] and *Lewis v. Farmers Insurance.*[31] A *Christian* claim rests on the insurer's implied-in-

---

27. The term *nonperformance* is used as the modern legal equivalent of the common law's *nonfeasance,* and the term *misperformance* is used as a synonym for the common law's *misfeasance.* These terms are distinguishable from *malfeasance* or *malperformance. Nonfeasance* means the total omission or nonperformance of some act which a person ought to do. J.H. Baker, Manual of Law French at 156 (2d Ed.1989). *Misfeasance* means the doing of an act badly. *Baker, supra,* at 150. *Malfeasance* is active wrongdoing. Baker, *supra,* at 144. *See also Carlisle v. Burke,* 82 Misc. 282, 144 N.Y.S. 163, 164 (N.Y.Co.Ct. 1913).

28. The question whether this insurer's refusal to provide a defense should be regarded under Oklahoma law as a tort is not submitted for our answer. *See* Part II *supra; Shebester, supra* note 4 at 137. *See in this connection Wilson v. Gipson,* Okl., 753 P.2d 1349, 1356 (1988).

29. *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198, 200–201, 203 (1958)(a duty of good faith and fair dealing is implied in law and is not created by the terms of the underlying contract); *Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 19, 426 P.2d 173, 179 (1967)(the court fashioned a tort remedy for mental suffering against an insurer who wrongfully refused to settle a third-party claim); *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 93 (1970)(the

court recognized an action for intentional infliction of emotional distress caused by an insurer's bad-faith refusal to pay a valid claim); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 486, 510 P.2d 1032, 1038 (1973)(the court expanded upon *Fletcher, supra,* to establish a tort for breach of the implied duty of good faith in first-party cases).

30. Okl., 577 P.2d 899, 901 (1978)(bad-faith refusal to settle a claim was first recognized as a distinct tort in *Christian* ). There is no doubt about the insured's standing to bring a bad-faith action against its insurer. The claim rests on the insurer's implied duty of good faith and fair dealing, which arises from the contractual relationship between the insurer and the insured.

31. Okl., 681 P.2d 67, 69–70 (1984). Under the rubric of *Christian, supra* note 30, and *Lewis, supra,* we have dealt with first-party claims between insurer and insured. A claim for bad-faith tort is available only to the insured. A third-party beneficiary may be viewed as a stranger to the contract and hence lacks standing to bring a bad-faith claim. *Gianfillippo v. Northland Cas. Co.,* Okl., 861 P.2d 308, 310 (1993)(an injured auto passenger covered under the driver's liability insurance policy *may not* bring a bad-faith action against the insurer); *Allstate Insurance Co. v. Amick,* Okl., 680 P.2d 362, 364–365

law duty to act in good faith and deal fairly with the insured to the end that the policy benefits are received.[32] The insurer is not liable for breach of its duty to settle in good faith *unless* the insurer, based on facts *known and knowable*[33] to it at the time of refusal, makes a decision—adverse to the insured—that is not legally justifiable. The *Christian* cause of action, crafted as it is from the insured/insurer relationship, flows not so much from contract as it does from law that attaches a cluster of implied-in-law duties to the insurer/insured status.[34]

The comparative fault doctrine is a product of the *Christian*-type obligation. California permits the defense of *comparative bad faith*[35] but does not appear to have adopted the so-called *reverse bad-faith tort*.[36] The former concept establishes an affirmative defense, premised upon principles of comparative fault, which allocates fault and apportions damages according to harm inflicted by both the insurer's and insured's bad-faith conduct. The latter doctrine creates an independent tort that allows an insurer to seek affirmative relief for an insured's breach of the duty of good faith and fair dealing. The approach draws from the principle that an insurer should not be subjected to bad-faith liability if the insured (a) procured the policy

(1984)(an injured third party could not maintain an action against the tortfeasor's insurer for bad-faith negotiations and for failure to settle claims fairly and in good faith); *cf. Townsend v. State Farm Mutual Automobile Insurance Co.*, Okl., 860 P.2d 236, 238 (1993)(a "class 2 insured" passenger covered by insured's uninsured motorist [UM] policy *may bring a bad-faith action against an insurer;* the passenger's "class 2 status" under the policy and the statutory relationship between an injured person and the insurer under the UM statute provide the basis for the passenger's standing).

**32.** *Christian, supra* note 30 at 901.

**33.** *Holman, supra* note 25 at 780; *Conti, supra* note 25 at 1362; *Buzzard, supra* note 25 at 159.

**34.** Our post-*Christian* jurisprudence supports the notion that a *Christian* bad-faith claim is founded on the parties' status-based relationship between the insurer and its insured. *Rodgers v. Tecumseh Bank*, Okl., 756 P.2d 1223, 1226 (1988). In *First National Bank and Trust Co. of Vinita v. Kissee*, Okl., 859 P.2d 502, 509 (1993), the court *refused to expand* its *Christian* teachings to cover the relationship of lender and borrower in the context of a banking transaction.

**35.** For a discussion of the comparative bad-faith defense, see Comment, Placing a Check on an Insured's Bad Faith Conduct: The Defense of "Comparative Bad Faith", 35 S. Tex.L.Rev. 485 (1994); Douglas R. Richmond, An Overview of Insurance Bad Faith Law and Litigation, 25 Seton Hall L.Rev 74 (1994). California adopted the concept of comparative bad faith in *California Casualty Gen. Ins. Co. v. Superior Court*, 173 Cal.App.3d 274, 218 Cal.Rptr. 817, 823 (1985). Under the comparative bad-faith principles established in *California Casualty, supra*, the trier of fact must balance the insured's bad faith against that of the insurer by reducing any damage award due the former in direct proportion to the assessed fault of the latter. *Richmond, supra* at 134–135.

**36.** *See discussion in* R.Kent Livesay, Leveling The Playing Field of Insurance Agreements in Texas: Adopting Comparative Bad Faith As An Affirmative Defense Based On The Insured's Misconduct, 24 Tex.Tech.Law R.1201,1222–1223 (1993); *Johnson v. Farm Bureau Mutual Ins. Co.*, 533 N.W.2d 203, 208 (Iowa 1995)(the court declined to recognize the tort of "reverse bad faith," observing that to its knowledge no other jurisdiction had adopted it); Richmond, Insured's Bad Faith As Shield or Sword: Litigation Relief For Insurers?, 77 Marq.L.Rev. 41, 69 (1993)(the author observes that reverse bad faith has yet to be expressly recognized); *but cf.*, B. Ostrager, T. Newman, G. McKeon, 13th Annual; Insurance Excess and Reinsurance Coverage Disputes, Practising Law Institute (January 1995), noting that California courts have recognized the so-called reverse bad-faith theory as both an affirmative defense and as an independent cause of action, citing Kaiser Found. *Hospitals v. North Star Reins. Corp.*, 90 Cal.App.3d 786, 153 Cal. Rptr. 678, 682 (1979)(when insured and its primary insurer conspired fraudulently to assign false dates of loss (other than those in which the losses actually occurred), excess insurer had direct cause of action against both the insured and the primary insurer for breach of the reciprocal duty of good faith and fair dealing).

*But cf. Tokles & Son Inc. v. Midwestern Indemnity Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936 (1992)(the court refused to recognize the tort of reverse bad faith because of the insurer's superior financial position and bargaining power). Mealey's Litigation Reporter indicates reverse bad-faith claims have been allowed in recent federal- and state-court actions. 10 No. 7 Mealey's Litig. Rept.: Bad Faith 17 (August 1, 1996)(a federal court in *Joseph Garvey v. National Grange Mutual Life Insurance Co.* No. 95–19 E.D. Pa., May 2, 1996, allowed an insurer to press a reverse bad-faith counterclaim); 2 No. 5 Mealey's Litig. Rept.: Insurance Fraud 7 (April 12, 1995) (an insurance company was awarded a jury verdict for an insured's reverse bad faith in a Texas district court case, *Munife Silva v. Metropolitan Life Ins. Co.*, No. 92–010830).

through fraud, (b) breached contractual obligations or (c) engaged in other misconduct. A breach of the insured's duty to cooperate [37] formed the basis for a comparative bad-faith defense in *California Casualty Gen. Ins. Co. v. Superior Court*,[38] the leading case from that state, where the insured failed promptly and accurately to furnish its carrier with all relevant information and evidence.

■ For the reasons discussed more fully in Part III *supra*, we *reject the notion* that the insured's responsibility to provide its insurer adequate notice of facts relating to insurance coverage can be translated into an actionable tort or into a contributory-fault defense concept for comparison with the fault of the insurer.[39] *We hence hold that an insured's misperformance of its contractual duty is neither a "free-standing" ex contractu breach nor a civil harm actionable in tort* as an incident of the insurer/insured status.

### V

### INSURED'S FAILURE TO GIVE ADEQUATE NOTICE MAY BE A *DEFENSE TO DEFEAT LIABILITY IN TOTO OR PRO TANTO*

The third question, as we understand its meaning, asks whether the insured's failure to keep the insurer informed of critical post-denial developments *affects the whole liability or goes solely to the issue of damages.*

■ A tort-like comparison of the parties' *degree of bad faith* does not avail. Although the insured who fails to meet its duty-triggering conduct by giving deficient notice is not answerable *ex delicto*, the insured's inadequate notice avails to the insurer as a defense. If failure timely to provide critical information adversely affected the *entire loss*

that was insured, it would avail as an absolute defense against liability (i.e., as *in toto* defense). That defense should show that the insured's failure to give adequate notice—not available from other sources—made it entirely impossible for the insurer to discharge its duty. On the other hand, if the defense were to be shown as having affected only an element (or portion) of the claimed loss, the defense could be invoked to defeat (*pro tanto*)[40] that part of the total loss which was due to the insured's misperformance of its notice-giving duty.

These defenses depend on the impact of the insured's inadequate notice on the insurer's opportunity to meet its contractual obligation. We leave to the federal court the task of assessing the evidence to determine whether the insured's deficient performance of its duty-triggering conduct will avail here as a liability-defeating bar or merely as a *pro tanto* defense.

### SUMMARY

We assume the case will be tried and submitted to the jury on the theory declared by the certifying judge's pretrial order—the insurer's bad-faith failure to honor a claim by its refusal to provide a defense. The case presents the breach of a *single duty*—that of providing a defense. The duty runs *from the insurer to the insured*. The discharge of this duty is triggered by the insured's conduct which calls for adequate notice of information critical to the insurer's consideration of the claim. An insured's nonperformance or misperformance of its notice-giving obligation is actionable neither *ex contractu* nor *ex delicto*. It may serve as a defense *to defeat liability* (when interposed as an *in*

---

37. Most insurance policies contain provisions requiring the insured to "cooperate" with the insurer in the investigation of any claim under the policy. Failure to do so gives rise to a contract defense, but does not necessarily bar a bad-faith action against the carrier. 8 APPLEMAN, *supra* note 21, § 4774 at 231–234.

38. *California Casualty, supra* note 35, 218 Cal. Rptr. at 823.

39. We are not asked to answer, and express no opinion on, whether an *insured's active wrongdo-*

ing (*malfeasance*)—such as pressing a claim for self-authored loss from arson—would constitute a tort committed against the insurer or call for a comparison of the insured's contributory fault in a bad-faith action against the insurer.

40. BLACK'S LAW DICTIONARY defines "pro tanto" as "[f]or so much", "for as much as may be," or "as far as it goes." *Id.* at 1222 (6th Ed.1990). *See Hart Industrial Supply Co. v. Craig,* Okl., 405 P.2d 93, 97 (1965)(Jackson, V.C.J., concurring specially).

*toto* bar) or as a *pro tanto* defense to reduce recovery. When used as *pro tanto* defense it avails to the extent that the insured's *deficient performance* negatively affected the insurer's capacity to carry out its duty.

■ In short, in this action to recover for the insurer's bad-faith refusal to pay a part of the loss to be indemnified under the policy's provisions, the defense based on the insured's claimed failure timely to supplement its initial notice by providing critical information does not call upon the trier to compare the parties' fault, one toward the other, but rather to measure the extent of the impact, if any, the insured's alleged misperformance (by withholding vital information) may have had on the *main issue* in the case—the good or bad faith of the insurer's decision not to defend the action against the insured. The trier's assessment, we repeat, is to be rested upon consideration of facts that were *known and knowable* to the insurer when its response was due to the insured's initial request to defend the action.

The task of analyzing the effect of today's answers on the pending suit is deferred to the certifying court.

**CERTIFIED QUESTIONS ANSWERED.**

ALMA WILSON, C.J., and LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

KAUGER, V.C.J., concurs in result.

HODGES, J., concurs in part and dissents in part.