**Edwin D. WINTERS and Kathleen C. Winters, Plaintiffs,**

v.

**STATE FARM AND FIRE CASUALTY COMPANY, a foreign insurance company, Defendant.**

No. 98–425–P.

United States District Court, E.D. Oklahoma.

Jan. 29, 1999.

Gregory G. Meier, Tulsa, OK, for Plaintiffs.

William R. Cathcart, Roger K. Gofton, Virginia, Cathcart & Holleman, Oklahoma City, OK, for Defendant.

## ORDER

PAYNE, United States Magistrate Judge.

Now before the Court is Defendant's Motion for Summary Judgment,, Plaintiffs' Response to said motion and Defendant's Reply. Defendant moves this court to dismiss Plaintiffs' cause of action against it pursuant to Fed.R.Civ.P. 56.

Plaintiffs filed the instant case on July 21, 1998, alleging breach of contract. The case was removed to this court on August 27, 1998, from the District Court of Bryan County, Oklahoma. Defendant argues that Plaintiffs breached their contract by failing to submit to a timely examination under oath.

## BACKGROUND

The record in the instant case establishes that on July 8, 1996, Plaintiffs' home was damaged by fire. The Oklahoma State Fire Marshal's office determined that the cause of the fire was arson. However, Plaintiffs dispute that the cause of the fire was arson. On September 20, 1996, arson charges were filed against Plaintiffs. At the time of the fire, there was in full force and effect a homeowners insurance policy issued to Plaintiffs by State Farm. The insurance policy provided in relevant part:

\* \* \* \* \* \*

Section I—Conditions

2. Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:

d. as often as we reasonably require:

(2) provide us with records and documents we request and permit us to make copies

(3) submit to and subscribe, while not in the presence of any other insured:

(a) statements; and

(b) examinations under oath

\* \* \* \* \* \*

8. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

On September 23, 1996, Plaintiffs submitted a sworn statement of proof of loss. On September 24, 1996, State Farm advised Plaintiffs that it was exercising its right to require Plaintiffs to submit to examinations under oath. On September 27, 1996, counsel for State Farm requested Plaintiffs to appear for the examinations under oath on October 8, 1996.

On October 7, 1996, counsel for Plaintiffs advised State Farm's counsel that as arson charges were pending against Plaintiffs relating to this fire, and due to a scheduling conflict, plaintiffs would not appear for the scheduled examinations under oath. Plaintiffs' counsel advised State Farm that the plaintiffs would be available for their examinations under oath at a later date. On October 7, 1996, counsel for State Farm advised counsel for Plaintiffs that State Farm still wished to proceed with the examinations under oath. On October 8, 1996, counsel for State Farm again requested that Plaintiffs either present themselves for examinations under oath as quickly as possible on a date that the parties could agree on, or agree to suspend the running of the time limitations of Okla.Stat. tit. 36, § 3629 and the 30 working day and 45 working day provisions of the Unfair Claims Settlement Practices Act.

On October 9, 1996, counsel for Plaintiffs agreed with Defendant's counsel that pending criminal charges against Plaintiffs did not relieve them of their obligations under the insurance policy to give their examinations under oath; however, Plaintiffs' counsel advised that Plaintiffs would not be appearing for their examinations under oath until such time as the criminal matters were concluded. Counsel for Plaintiffs further advised Defendant that there was a sufficient waiver contained in subsection © of Okla.Stat. tit. 36 § 1250.7 to cure any prejudice the Defendant might encounter in its' investigation of this matter.

As Plaintiffs did not appear for their examinations under oath, State Farm advised Plaintiffs on November 22, 1996, that they were in breach of their obligations under the homeowners policy and that although State Farm was not denying the claim, State Farm was declining to make payment at that time.

On July 8, 1997, Plaintiffs filed a lawsuit against State Farm in the District Court of Bryan County. On July 23, 1997, Plaintiffs dismissed their case without prejudice. On July 21, 1998, Plaintiffs refiled their lawsuit against State Farm in the District Court of Bryan County. On August 27, 1998, State Farm filed its Notice to Remove this case to the United States District Court for the Eastern District of Oklahoma.

On September 14, 1998, the arson charges against Plaintiffs were dismissed by the State with prejudice. On September 24, 1998, approximately two years after Plaintiffs' loss, State Farm's counsel took Plaintiffs' depositions in the instant case.

### DISCUSSION

In general, summary judgment is proper where the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249, 106 S.Ct. 2505.

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir. 1988). In regard to the necessary burdens, however, the Supreme Court has instructed that:

> in cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in

this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by their own affidavits, or by the "depositions, answer to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

Defendant argues that Plaintiffs have forfeited their right to recover under the policy by failing to submit to examinations under oath. Plaintiffs, however, contend they have substantially complied with the terms of the policy provisions by providing all relevant documentation and by providing the depositions that were taken separately in the instant case.

Oklahoma courts have not addressed the question of whether an insured's failure to provide an examination under oath constitutes a breach or forfeiture the insurance contract. However, in answer to a certified question presented by the United States Court for the Northern District of Oklahoma, the Oklahoma Supreme Court held that in a bad faith case, a breach of the insured's obligation to give notice may modify, excuse or defeat the insurer's performance under the contract. *First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland,* 928 P.2d 298 (Okla.1996). The degree, or the extent of prejudice suffered by the insurance company, was considered a defense available to the insurer and a question for the trier of fact. *Id.* at 305–308.

■ Likewise, the Kansas Supreme Court has also held that an insured's misperformance, or nonperformance, of a contractual

duty may be used by the insurer as a possible defense; the insurance company is required, however, to prove prejudice before an insurance policy may be forfeited. *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Federal Deposit Insurance Corporation,* 264 Kan. 733, 957 P.2d 357 (Kan.1998). Under the Uniform Certification of Questions of Law Act, K.S.A. 60–3201, et seq., the Tenth Circuit Court of Appeals certified the following question to the Kansas Supreme Court: "Does the failure by an insured to provide a proof of loss within the time limit provided by a fidelity bond of the type involved here justify denial of coverage under the bond without the insurer showing that it has been substantially prejudiced by the untimely proof of loss?" The Supreme Court of Kansas, held that the answer under Kansas law is "No." *Id.* Therefore, under Kansas law, an insurer must demonstrate that it has been substantially prejudiced by the claimant's noncompliance with a policy requirement before the insurance will be forfeited. In a treatise quoted extensively in *National Union* the court cites the following passage:

> Conditions in contracts are not legally essential. But in insurance contracts, conditions are very important and are in every form of insurance contract. The insured event is the primary condition with innumerable subordinate conditions concerning the risk, payment of premiums, proof of loss, giving of notice, cooperation and assistance conditions, and so on. The difference between a promise and a condition should be noted. A promise imposes an affirmative obligation the breach of which gives another a right to sue for damages or other relief. Conditions are usually precedent to that duty and must occur to trigger or activate the duty contained in the promise. A condition is a shield, not a sword. For instance, despite the many acts to be done by the insured under a fire insurance policy, the fire contract is a unilateral contract. The condition precedent to its formation is that the applicant complete and submit the application together with the initial premium. Once the fire insurer accepts those acts and issues the fire insurance policy, a unilateral contract is formed, that is, an act for a promise. It is a reverse unilateral contract in that the applicant's acts of performance induce insurer's promise. Customarily, all forms of insurance are presumed to be unilateral contracts. Therefore, after the insured has paid the premium, only the insurer is legally bound (by its promises) to do anything.

*National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Federal Deposit Insurance Corporation,* 264 Kan. 733, 957 P.2d 357, 363 (Kan.1998) *citing* 1 Holmes Appleman on Insurance 2d 4.30, pp. 541–43 (1996). "Thus, many courts apply the rule that, in the absence of an express forfeiture clause, if the insured gives the insurer timely and adequate notice, even though not submitted in writing or in keeping with policy terms, it is the obligation of the insurer to show actual prejudice for denial of coverage." *Id.* at 364.

■ When an insurance company seeks to deny coverage already paid for by premiums, the insurance carrier ought to be required to show a sound reason for doing so. *National Union Fire Insurance Company v. FDIC,* 957 P.2d at 366, *citing Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (Pa.1977). "The fundamental purpose for requiring an insurance company to receive early notice of an occurrence which may possibly give rise to a claim is that prompt notice will afford the carrier an opportunity to investigate the occurrence and thereafter properly dispose of any claim through settlement or defense of the claim." Consequently, the notice requirement helps to protect the carrier against fraudulent and otherwise invalid claims. *National Union Fire Insurance Company v. FDIC,* 957 P.2d t 366, *citing,* 13 G. Couch, Insurance § 49:2 (2d ed.1965). "In other words, the purpose for the notice requirement is to protect the insurance carrier from having its interests prejudiced." *Brakeman v. Potomac Insurance Co.,* 371 A.2d at 197 (1977). "However, when an insurance carrier's interests have not been materially prejudiced because of late notice, the purpose for the notice requirement is nonexistent. It would thus be neither fair nor logical for an insurance carrier to avoid re-

sponsibility when its interests have not been prejudiced by late notice. As a general rule, the determination of whether material prejudice exists would be a fact question." Couch, Insurance § 49:50 (2d ed.1965); *See also, First Bank of Turley v. FDIC,* 928 P.2d at 305.

Although the court in *National* was primarily concerned with notice and proof provisions of a contract, cooperation and assistance provisions, such as the provision requiring an insured to provide an examination under oath, are virtually indistinguishable in the sense that both are merely conditions contained in a unilateral contract. Because the "provisions of standard-form insurance policies [are] neither negotiated nor bargained for, an insurance company must 'provide a sound reason' before it can deny coverage." *National Union v. FDIC,* 957 P.2d at 364, *citing Hospital Support Services Ltd. v. Kemper Group Inc.,* 889 F.2d 1311, 1313 (3d Cir.1989).

■ "Since the purpose of the notice provision is to prevent the insurance company from being prejudiced, it only makes sense to require the insurance company to prove prejudice before denying coverage." *National Union v. FDIC,* 264 Kan. 733, 957 P.2d 357, 364, *citing Resolution Trust Corp. v. Moskowitz,* 868 F.Supp. 634, 641 (D.N.J.1994). Likewise, the purpose of the examination under oath is to enable the insurance company to investigate and pay the claim without prejudice, and it too makes sense that Defendant should be required to prove prejudice before denying coverage.

■ In summary, the court finds the better-reasoned case can be made for requiring prejudice than not. Given that insurance contracts are not negotiated agreements, no compelling reason appears for allowing the insurer to avoid performing a duty purchased by the insured's premium unless the insured's delay caused loss to the insurer. This would be true for notice of loss and proof of loss provisions, as well as cooperation and assistance provisions in the policy or bond. Thus, this court concludes that Defendant must prove prejudice before denying coverage based on the Plaintiff's noncompliance with the examination under oath provi-

sion of the policy. This being a question of fact for the jury, Defendant's Motion for Summary Judgment is denied.