2007 OK CIV APP 27

Dan Jay GILBRAITH, Plaintiff/Appellee,

v.

Amy CLEVENGER, f/k/a Amy Thomas, Defendant/Appellant,

And,

Oklahoma Department of Human Services, ex rel. Child Support Enforcement, Third–Party Defendant.

No. 102,966.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 22, 2006.

Betsy Ann Brown, Foshee & Yaffe, Oklahoma City, Oklahoma, and, Christi Lynn Chesley, Norman, Oklahoma, for Defendant/Appellant.

Phillip J. Tucker, Melodie Martin–Farris, The Tucker Law Firm, Edmond, Oklahoma, for Plaintiff/Appellee.

CAROL M. HANSEN, Judge.

¶1 In this paternity action, Appellant, Amy Clevenger (Mother) appeals from the trial court's order dismissing the action pursuant to the motion to dismiss filed by Appellee, Dan Jay Gilbraith (Father). We reverse because the trial court erred in determining, as a matter of law, a preexisting obligation for child support could not be ordered after adoption without consent, and remand the matter to the trial court for determination of Father's child support obligation.

¶2 The procedural history and facts of this case are essentially uncontested, but they are unusual in that both an adoption proceeding and this "reverse" paternity action are involved. Both matters concern the minor child, M.P.G. (the Child), who was born in

1992. Father's name was on the Child's birth certificate and Mother states he also signed an affidavit of paternity. Father was in the military at the time of the Child's birth and provided support until he was released from service in 1994. Mother and Father then agreed he would not seek visitation and she would not seek child support. Father had no direct contact with the Child after that time and Mother did not attempt to enforce Father's child support obligation until the controversy over adoption arose.

¶ 3 Mother married Justin Clevenger (Clevenger) in April, 1994. In August 2003, Clevenger began taking action to adopt the Child. Clevenger's counsel wrote to Father seeking his agreement for the adoption. Father agreed to facilitate the adoption, but eventually asked Mother to waive all right to child support, which Mother would not do. Father then filed this action in April 2004. Father asked the trial court, *inter alia*, to determine his paternity of the Child, grant custody to Mother, order visitation for him and his parents, and compute child support to be paid by him through Defendant Department of Human Services.[1]

¶ 4 Clevenger filed his *Petition for Adoption* in August 2004, with accompanying *Application for Adoption Without Consent of the Natural Father*. On September 2, 2004, Mother moved to consolidate the adoption and paternity proceedings. On that same day, the trial court filed a Court Minute on which the court noted its finding of Father's paternity and that the court would discuss the matter with the judge before whom the adoption was proceeding to determine which court would handle the case, or in what order the cases would proceed. In October 2004, the District Chief Judge ordered this action transferred to the judge presiding over the adoption, but there is nothing in the record to establish the two actions were actually consolidated. They each retained their own case numbers and were presided over and decided by different judges.

¶ 5 In April 2005, Mother moved to enter this cause on the non-jury docket. Father's

paternity of the Child having already been determined by the trial court, the issues remaining were child support, custody and visitation. The trial court set the case for pretrial conference in September, but in August 2005, Father moved to dismiss or stay the proceedings. Father noted Clevenger's adoption of the Child without Father's consent had been approved, thereby terminating his parental rights. Father argued he no longer owed a child support duty to the Child because his parental rights had been terminated, so the paternity action should be dismissed. Alternatively, he noted his appeal of the adoption court's findings and argued the paternity action should be stayed pending the appeal.

¶ 6 Mother opposed Father's motion to dismiss or stay, asserting Father had, at a minimum, remaining child support obligations for the period prior to termination of his parental rights, regardless of the outcome in the adoption appeal. The trial court, in its September 2, 2005 order, stayed the proceeding. The court held—"If Plaintiff's adoption appeal is unsuccessful/denied, then this case shall be dismissed. If Plaintiff's adoption appeal is successful/granted, then this case shall proceed." The trial court denied Mother's motion to reconsider this order.

¶ 7 The Court of Civil Appeals, in an unpublished opinion in Appeal No. 102,062, affirmed the adoption proceeding approving Clevenger's adoption of the Child without Father's approval. Mandate issued in that appeal on December 8, 2005. On December 13, 2005, the trial court filed its *Order of Dismissal* in this action. The court stated in its order:

The Court previously ruled that pending the success of [Father] on Appeal, this matter would be dismissed as a child support obligation has not been previously determined, and an arrearage may not be sought after the completion of the adoption. The Court of Civil Appeals affirmed the ruling of the District Court determining the child eligible for adoption without

---

1. Department of Human Services is not a party to the appeal and has expressly waived its right to file an appellate brief. Although denominated

a third-party defendant, the Department was actually an originally named defendant by Father.

consent of the natural father therefore disposing of all issues in this paternity action.

¶ 8 Mother appeals from the trial court's order of dismissal. As she did before the trial court, Mother contends, as a matter of law, that Father's child support obligation for the period *prior* to termination of his parental rights may be enforced even after his rights were terminated. Under the relevant statutory provisions, and pertinent appellate construction of those statutes, we agree. Statutory construction presents a pure legal question, which we review by a *de novo* standard. *Upton v. State ex rel. Department of Corrections*, 2000 OK 46, 9 P.3d 84.

¶ 9 The most pertinent statutory provisions are found at *10 O.S.2001 83*. Subsection 83(C)(1) provides:

An individual who has been legally determined to be the father of a child pursuant to Section 70 of this title, or an individual who has been judicially or administratively determined to be the father of a child shall be ordered to pay all or a portion of the costs of the birth and the reasonable expenses of providing for the child, provided that liability for support provided before the determination of paternity shall be imposed for five (5) years preceding the filing of the action.

¶ 10 Under Subsection 83(B)(2), an action to enforce "the obligation of support and education" may be brought at any time prior to the eighteenth birthday of the child. Subsection 83(B)(4) provides—"The Father's obligation to support is terminated if the child is adopted." Subsection 83(D):

The amount of child support and other support including amounts provided for in subsection C of this section shall be ordered and reviewed in accordance with the child support guidelines provided in Section 118 of Title 43 of the Oklahoma Statutes.

¶ 11 In *Martin v. Brock*, 2001 OK CIV APP 145, 55 P.3d 1095, the Court of Civil Appeals held:

The language of § 83(C)(1) is clear and unambiguous. It does not leave the trial court any discretion in deciding whether to impose liability for support for the five years preceding the filing of a paternity petition, but absolutely requires that such liability be imposed.

¶ 12 Thus, generally the trial court would have no discretion in ordering Father to pay child support. However, Father argued, and the trial court found, "an arrearage may not be sought after the completion of an adoption." Mother concedes Father has no obligation for *future* child support after the adoption was completed, that is clear under § 83(B)(4), but she asserts adoption does not obviate Father's child support obligation arising *before* the adoption. We agree.

¶ 13 The trial court's finding an arrearage may not be sought after adoption without consent is clearly inconsistent with the Court of Civil Appeals' holding in *Newton v. Newton*, 1998 OK CIV APP 24, 956 P.2d 934. There, the Court adopted the holding and reasoning in *Bercaw v. Bercaw*, 45 Ohio St.3d 160, 543 N.E.2d 1197 (1989), that—"Even though the adoption terminates any future legal relationship, it has no effect on obligations that accrued during the tenure of the then existing parent-child relationship." The *Newton* Court held "the fact that the action to reduce arrearage to judgment was brought after the adoption is irrelevant to the right to attempt to collect the arrearage."

¶ 14 Father attempts to distinguish *Newton* by arguing the father there had been ordered to pay child support by a divorce decree. We are unpersuaded by Father's argument. Father had an obligation under § 83(C), as a matter of law, which was as enforceable as an order for child support arising from a divorce action. Once the trial court had judicially determined Father's paternity of the Child, and it was never actually contested by any party, the trial court had no discretion in imposing child support liability for the five years preceding filing of the action.

¶ 15 The post-adoption affect on Father's liability was irrelevant to Father's obligation for support of the Child which had accrued under law. The fact that Father's obligation had not been definitively determined is also irrelevant. Subsection 83(D) pro-

vides the formula for going back and determining Father's obligation using child support guidelines which are in general use for that purpose. It is clear the Legislature contemplated going back in time to determine support obligations because it imposed that obligation from the time paternity is first legally, judicially or administratively determined.

¶ 16 With respect to such a *legal* determination, Mother contends Father should be held liable for child support from the time she asserts he signed a paternity affidavit. Subsection 83(C)(1) does provide that father may be obligated for child support from the time paternity is *legally* determined pursuant to *10 O.S.2001 § 70.* Section 70(B)(1) in turn provides paternity may be established by a "notarized written statement of the father and mother acknowledging paternity pursuant to Section 1–311.3 of Title 63 of the Oklahoma Statutes."

¶ 17 Mother's contention fails for two reasons. First, the provision allowing for establishing paternity by a notarized written statement was not added to § 70 until 1994 and the Child was born in 1992. An affidavit executed at the time the birth certificate was filed could not have complied with *63 O.S. 2001 § 1–311.3* because that section was also not enacted until 1994. Secondly, even if the affidavit were possibly applicable, it is not in the appellate record. Without the affidavit, we cannot determine if it complied with § 1–311.3. It is the duty of the appealing party to procure a record that is sufficient to obtain the corrective relief sought. *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721.

¶ 18 The trial court's order dismissing this action is REVERSED. This matter is REMANDED to the trial court for determination of Father's child support obligation in accordance with this opinion.

BELL, P.J., concurs, and JOPLIN, J., dissents.