OSCN Found Document:SWAIN v. UNITED AUTOMOBILE INSURANCE CO.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 SWAIN v. UNITED AUTOMOBILE INSURANCE CO.
2024 OK CIV APP 15
550 P.3d 351
Case Number: 120117
Decided: 12/21/2023
Mandate Issued: 05/09/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2024 OK CIV APP 15, 550 P.3d 351

 

KAREN SWAIN, Plaintiff/Appellee,
v.
UNITED AUTOMOBILE INSURANCE COMPANY, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
SEQUOYAH COUNTY, OKLAHOMA

HONORABLE JEFFREY J. PAYTON, TRIAL JUDGE

REVERSED AND REMANDED WITH DIRECTIONS

Randall K. Calvert, Andrew R. Davis, CALVERT LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Appellee

Randall E. Long, William T. McKee, RHODES, HIERONYMUS, JONES TUCKER & GABLE, Tulsa, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, VICE-CHIEF JUDGE:

¶1 United Automobile Insurance Company appeals from a judgment entered upon a jury verdict in which the jury awarded Karen Swain compensatory damages for United's breach of the covenant of good faith and fair dealing and punitive damages, and the trial court's award of attorney fees. We reverse and remand with directions to enter judgment for United.

BACKGROUND

¶2 Matthew Leroy Swain is Ms. Swain's son. At the time of the motor vehicle accident underlying this case (September 12, 2010), he was an unemancipated minor. On September 10, 2012, Matthew, who attained majority, filed a lawsuit against Ms. Swain in negligence for severe injuries he sustained when Ms. Swain lost control of the vehicle she was driving and in which he was a passenger; Matthew was ejected from the front passenger seat. United was not named as a party in that lawsuit.

¶3 Although Ms. Swain was not served, about a year and a half later, on April 14, 2014, she filed an Answer to Matthew's lawsuit in which she denied her negligence and filed a Third-Party Petition against United alleging breach of contract and bad faith. Among other allegations, Ms. Swain alleged that at the time of the accident, she had an "Oklahoma Personal Auto Policy" with United that provided liability coverage for bodily injury in the amount of $25,000.00 per person and $500,000.00 per accident and the vehicle involved in the accident was covered under that policy. She alleged that in "June 2012, [United] refused to provide coverage under [the policy] for the bodily injuries sustained by [Matthew] in the September 10, 2010 accident." Ms. Swain also alleged she had been sued by Matthew for her negligent operation of the vehicle and in which action Matthew claimed her negligence was the proximate cause of his injuries.

¶4 As to her breach of contract claim, Ms. Swain alleged United was obligated under the terms of the policy and "controlling Oklahoma law and public policy," "to pay . . . $25,000 for the bodily injuries sustained by [Matthew]," and its failure to pay benefits for bodily injury was a material breach of the policy.[1] As to her bad faith claim, Ms. Swain alleged United violated the duty of good faith and fair dealing it owed to her "by unreasonably, and in bad faith, refusing to pay a valid claim under the Policy." She alleged as follows:

In particular, [United] breached its duty of good faith and fair dealing by: (a) failing to properly investigate and evaluate the claim for coverage under the policy; and (b) refusing to pay the claim without a reasonable basis for that refusal.
. . . As a direct result of the failure of [United] to deal fairly and in good faith with [her], [she] has suffered a loss of peace of mind and security, and has suffered emotional distress, worry and anguish, and embarrassment.

She further alleged United's actions were "reckless and/or intentional" and sought an award of punitive damages.

¶5 According to the record, the Answer and Third-Party Petition were the first notice United received about Matthew's lawsuit against Ms. Swain. Upon receiving notice of Matthew's lawsuit, United defended the suit on behalf of Ms. Swain and eventually settled Matthew's claim for the policy limits of $25,000. On May 12, 2014, an entry of appearance was filed on behalf of United and United filed its motion to dismiss Ms. Swain's claims against it.[2] On October 1, 2015, Matthew dismissed with prejudice his lawsuit against Ms. Swain "and her insurance carrier." An agreed order allowing United to file its answer out of time[3] was entered January 23, 2019. United admitted Ms. Swain was an insured under the policy of insurance but denied the allegations of breach of contract and violation of its duty of good faith and fair dealing. The June 7, 2021 Pre-Trial Conference Order states, "The remaining cause of action [against United] is for breach of the implied covenant of good faith and fair dealing," and was to proceed under the legal theories of recovery of breach of the duty of good faith and fair dealing, punitive damages, and attorney fees. On October 18, 2021, Ms. Swain filed a motion for leave to amend the caption of the case to reflect herself as Plaintiff and United as Defendant because Matthew's claim against Ms. Swain was settled. The court granted the motion.

¶6 Pertinent to this Court's decision on appeal, United, at numerous points throughout the proceedings, filed motions and responses to Ms. Swain's motions in which it argued that Ms. Swain's bad faith claim was based on a faulty legal premise. In essence, United argued that Ms. Swain was not entitled to bring a bad faith claim for its handling of Matthew's third-party claim.[4] Ms. Swain argues her action is not a third-party claim but rather is a first-party claim for United's breach of its contractual obligations to her before Matthew's lawsuit was filed.[5]

¶7 A two-day jury trial was conducted in October 2021 during most of which video deposition testimony of several witnesses was heard, including the testimony of the United claims adjusters who handled the claim; however, the jury also heard testimony from Ms. Swain and two of her experts. Among other matters, United moved for a directed verdict at the conclusion of Ms. Swain's case, but that motion was denied. United introduced the redacted video depositions of Matthew, Ms. Swain, and Matthew's attorney, and redacted versions of two exhibits. After receiving the court's instructions on Ms. Swain's claims for violation of the covenant of good faith and fair dealing, bad faith damages and punitive damages, the jury returned a verdict for Ms. Swain finding United breached its duty of good faith and fair dealing recklessly and intentionally and awarded her $25,000.00 in compensatory damages. In the second stage verdict, the jury awarded Ms. Swain $500,000.00 in punitive damages.

¶8 The trial court entered its judgment on the jury's verdict on December 6, 2021, and additionally awarded Ms. Swain prevailing party attorney fees and post-judgment interest. It is from the court's judgment on the jury verdict that United appeals.

STANDARD OF REVIEW

¶9 United challenges the trial court's denial of its motion for a directed verdict on Ms. Swain's claim of its breach of the duty of good faith and fair dealing.

A denial of a motion for directed verdict is reviewed de novo. Computer Publications, Inc. v. Welton, 2002 OK 50, ¶ 6, 49 P.3d 732, 735. In Gillham v. Lake Country Raceway, 2001 OK 41, 24 P.3d 858, the basic test as to when it is appropriate to sustain a motion for directed verdict is set forth. There it is stated:

A motion for directed verdict raises the question of whether there is any evidence to support a judgment for the party against whom the motion is made, and the trial court must consider as true all the evidence and inferences reasonably drawn therefrom favorable to the non-movant, and disregard any evidence which favors the movant. A demurrer to the evidence or motion for directed verdict should be granted only if the party opposing the motion has failed to demonstrate a prima facie case for recovery.

2001 OK 41, at ¶ 7, 24 P.3d at 860 (citations omitted).

Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 24, 121 P.3d 1080, 1092 (per curiam) (as corrected).

ANALYSIS

¶10 Among other assignments of error it raises on appeal,[6] United argues the trial court erred in denying its motion for directed verdict on Ms. Swain's bad faith claim. We agree the trial court erroneously denied United's motion for directed verdict because, even taking as true all facts and inferences from those facts favorable to Ms. Swain, she did not prove that United breached its duty of good faith and fair dealing toward her by failing to indemnify her under her policy of insurance.[7]

¶11 Ms. Swain's theory of this lawsuit has been not that she is suing as a third-party claimant; that is, she is not suing for bad faith on behalf of Matthew because of how he was unfairly treated by United. Nor is she denying that United defended her in Matthew's lawsuit against her and settled the claim for the policy limits. She also implicitly concedes, as she must, that no excess judgment was entered against her because of United's conduct prior to the filing of Matthew's lawsuit.[8] Instead, she argues the breach of United's duty of good faith and fair dealing as to her, as the insured, occurred at the time United wrongly and without valid justification determined Matthew was excluded from coverage under her policy regardless of anything else that occurred after the denial of that third-party claim.[9] Ms. Swain argues her bad faith claim rests on United's failure to indemnify her -- which she defines as a wrongful denial of coverage -- during the period she claims it wrongly refused to pay her policy limits to her minor son. She argues she was damaged by this failure to pay policy limits because United's denial of Matthew's legitimate claim forced her to expend money on his medical bills and other expenses (e.g., amounts required to be paid for copies of Matthew's medical records) and United's failure to carry out its contractual and fiduciary duties to pay this legitimate claim caused her upset, anxiety, and embarrassment.[10]

¶12 In considering Ms. Swain's arguments and authority, we conclude the underlying premise of her entire argument rests on an extension of the rule announced in Unah ex rel. Unah v. Martin, 1984 OK 2, 676 P.2d 1366,[11] an extension of the rule we decline to make. Ms. Swain's argument necessarily asserts that the Court's holding in Unah mandates that her policy coverage includes United's duty to pay her for medical expenses she incurs on behalf of her minor child at the time she makes a claim for the injured child and provides proof of those medical expenses even though her policy of insurance contains no medical pay provisions.[12] Her argument also impliedly asserts Unah, in effect, authorizes third-party bad faith claims where the third-party claimant is the insured parent's minor child.

¶13 The Unah Court identified the issue before it as "the opportunity to review our adherence to the rule of parental immunity which bars an unemancipated minor child from bringing an action for ordinary negligence against his parent." 1984 OK 2, ¶ 1, 676 P.2d at 1367 (footnote omitted). Because compulsory automobile liability insurance was then in force in Oklahoma, the Unah Court concluded "an unemancipated minor may recover to the extent of his parent's liability insurance coverage for injuries caused by the parent's negligent operation of a motor vehicle." Id. ¶ 4, 676 P.3d at 1368. The Court discussed the most frequently cited justifications for upholding parental immunity, as follows:

(1) disturbance of domestic harmony and tranquility; (2) interference with parental care, discipline, and control; (3) depletion of family assets in favor of the claimant at the expense of other children in the family; (4) the possibility of inheritance by the parent of the amount received in damages by the child; and (5) the danger of fraud and collusion between parent and child. Of these, the domestic tranquility policy is the rationale most frequently offered.

Id. ¶ 6, 676 P.3d at 1369 (citations omitted). The Unah Court reasoned:

We are of the opinion that today these policy reasons lose much persuasive force and provide no longer a sound basis for disallowing recovery by an unemancipated minor child for injuries caused by a parent's negligent operation of a motor vehicle. While the existence of liability insurance -- in this case compulsory coverage -- does not create liability, its presence is significant, and cannot be ignored in the determination of whether our courts should continue to deprive unemancipated minors the right enjoyed by all other individuals. We agree with the view expressed in Streenz v. Streenz, 106 Ariz. 86, 88, 471 P.2d 282, 284 (1970), that "[w]here such insurance exists, the domestic tranquility argument is hollow, for in reality the sought after litigation is not between child and parent but between child and parent's insurance carrier." Disruption of domestic tranquility is much less likely where the minor child can be compensated for his losses under the parent's liability coverage, which additionally eases any financial strain on the family resulting from the accident. We find further support in a leading case, Sorensen v. Sorensen, 369 Mass. 350, 339 N.E.2d 907, 914 (1975), where it was succinctly stated that "[w]hen insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets." Accord, Williams v. Williams, 369 A.2d 669 (Del. 1976). Under these circumstances, the effect such suit would have on parental discipline, or the parent-child relationship is realistically negligible.

1984 OK 2, ¶ 7, 676 P.3d at 1369.

¶14 Observing that "[p]ublic policy has been the sole justification for adoption and proliferation of the judicially created doctrine of parental immunity," the Court concluded"the doctrine "must be adjusted to meet legitimate interests under contemporary standards and conditions." Id. ¶ 10, 676 P.3d at 1370. The Court reasoned:

We can no longer countenance the legal anomaly where two minor children, negligently injured in the operation of a motor vehicle, one of them a stranger, could recover compensation for his injuries and the other one, a minor child of the operator of the vehicle, could not. Today, where all other passengers in a car are mandatorily protected by liability coverage it is unfair and against public interest to deprive an unemancipated minor the benefit of recovery. In this regard we further observe that familial harmony is more likely to be disturbed where the family's fund is depleted because the proceeds from liability insurance cannot be reached.

Id. The Unah Court thus determined that an unemancipated minor child -- not the parent of the minor child -- who is injured by his insured parent in the operation of a motor vehicle should be, as a matter of public policy and fairness, treated like any other third-party child injured by the insured in the operation of a motor vehicle. It, therefore, held that the parental immunity doctrine was abrogated to the extent of the parent/insured's liability insurance coverage.[13]

¶15 The Unah Court did not hold, however, that the insured's child is a first-party claimant; it did not hold the insured's child is a party to the insurance policy and derives rights and benefits from the contract of insurance as an insured; it did not hold that the insured's child has rights under the policy of insurance greater than any other unemancipated, third-party claimant.[14] Although Ms. Swain argues she is not asserting a third-party bad faith claim for Matthew, such a claim is what she in effect proposes because she ties the right given to the child in Unah to the insured parent.[15] Thus, an insurer, though in an adversarial position with a third-party claimant and legally permitted to treat the third-party differently from how it treats its insured in negotiations, litigation, and settlement matters because it has no contractual obligations to that third party, would face the prospect of a bad faith claim as is asserted here where the injured third-party claimant is the unemancipated child of the insured. We decline to include within the class of persons who may assert a violation of an insurer's implied duty of good faith and fair dealing a third-party claimant, even a third-party claimant who is the tortfeasor insured's minor child.

¶16 In our view, Ms. Swain's argument -- that she was entitled to her medical and other expenses and United's failure to pay that expense was a failure to indemnify her -- also rests, at least impliedly, on an erroneous reading of Unah and the right given to the parent/insured of the injured minor child. The Unah Court's reasoning does express concern for the "family fund" and to having a financial path available to replenish or to not deplete the common fund by allowing the child to pursue a third-party claim against the parent's insurer. We do not, however, agree that the Court's concern with the "family fund" was its signal that it was reversing long-standing Oklahoma jurisprudence that bars bad faith claims for third-party claimants or those who derive their rights through the third party's claim.

¶17 As noted by United,[16] we agree a parent has her own right of action to seek recovery for medical expenses she has incurred on behalf of that parent's injured third-party claimant child.[17] "Although it is based upon and arises out of the negligence causing injury to the child, the parent's right of action for consequential damages based on loss of services and on the expenses incurred as a result of the child's injury is distinct from the child's right of action for his or her own injuries." Independent School Dist. I-29 v. Crawford, 1984 OK 62, ¶ 9, 688 P.2d 1291, 1293-94 (superseded by statute on other grounds in Carlson v. City of Broken Arrow, 1992 OK 163, ¶ 8, 844 P.2d 152, 155). The Crawford Court relied, among other authority, on Boyett v. Airline Lumber Co., 1954 OK 321, 77 P.2d 676, wherein the Court stated, however, as "a correct statement of the law" that "[t]he right of the parent to recover for loss of services, etc., depends on the right of the child to recover for his injuries[.]" Boyett, ¶ 17, 277 P.2d at 680 (citation omitted). The Court further stated that because "the parent's right to recover for injuries to his child depends on the right of the child to recover, it follows that a parent may recover only under the same circumstances of prudence as would be required if the action were on behalf of the infant[.]" Id.

¶18 We reiterate that the contract of insurance Ms. Swain purchased does not provide her with medical expense coverage though it provides that medical expenses are includable in the limits of liability for bodily injury to a third party. Her claim that she is entitled to payment for medical or other expenses (e.g., the cost of copies of the child's medical records) stems from her status as a parent of the third-party claimant. Her claim is that in wrongfully excluding Matthew from coverage, she was denied "the coverage" for which she paid; that is, she was not "indemnified" at the time Matthew was wrongly denied coverage. We disagree with her position for two reasons.

¶19 First, as argued by United in support of its assertion that Ms. Swain cites no authority for her proposition that she is entitled as the "harm-dealing, tortfeasor parent . . . to payment from her own liability policy for damages that she caused,"[18] Ms. Swain cannot sue for her medical expenses because she would be suing herself, citing among other persuasive authority Connell v. Murray, 423 S.E.2d 304, 304 (Ga. App. 1992) ("A person cannot sue himself; the same person cannot be both plaintiff and defendant in the same action, even in different capacities." (citations omitted)).

¶20 Second, even if there might be a circumstance under which a parent/insured of an injured unemancipated minor may seek recovery in a separate action for medical expenses paid on behalf of the injured child, that right is tied to the child's claim. It arises because the child was injured and has a claim. In the circumstances of the present case where a parent (Ms. Swain) seeks recovery for medical expenses incurred on behalf of her injured child (Matthew), the recovery she might seek is all or part of the child's third-party claim. The parent's right to seek recovery for those expenses is not based on a contract of insurance with the insurer; it arises from the child's third-party claim. Nothing in the Unah Court's reasoning suggests it is extending to the parent/insured of a minor third-party claimant a right greater than the right of any other parent of an injured minor third-party claimant. That is, nothing in Unah suggests the parent/insured has a right to a bad faith claim while other parents of third-party claimants do not. Again, we are constrained from extending the Supreme Court's holding in Unah to provide such a right.

¶21 We conclude Ms. Swain's arguments are without merit. Consequently, regardless of Ms. Swain's characterization of her claim, as United correctly argued on directed verdict, her claim is one of failure to settle, or rather, it requires that she demonstrate she incurred some form of financial harm because of United's failure to pay Matthew the policy limits prior to suit, before any judgment or settlement agreement obligated her to make payment.

¶22 As reflected in Milroy, that claim is not viable here, where United ultimately provided Ms. Swain with a defense in litigation and paid policy limits, and where Ms. Swain was not exposed to an excess judgment or financial harm as a result of United's pre-suit failure to settle, even if unreasonable.[19] Under similar circumstances, Milroy found the insured had not suffered any cognizable injury in contract or tort, stating, "[i]n the context of a third-party claim made against the insured, Oklahoma law requires exposure to financial loss due to the insurer's handling of the claim as an element of a prima facie case for breach of the duty of good faith and fair dealing. 2007 OK CIV APP 6, ¶ 32, 151 P.3d at 929 (citing Badillo, ¶ 25, 121 P.3d at 1093). We find the Milroy Court's reasoning persuasive and conclude the same rationale applies here.

¶23 As previously noted herein, Ms. Swain argues Milroy does not apply because she asserts that United's initial denial of Matthew's claim prior to suit breached United's obligation to indemnify her under the policy, and thus her bad faith claim accrued the moment coverage was initially denied.[20] Swain cites no authority which supports this argument in the context to which she applies it here. She cites no authority which provides that an insurer breaches its duty to indemnify by rejecting a pre-suit, third-party claim against its insured, regardless of whether the insurer ultimately provides a defense and does in fact indemnify the insured for a settlement or judgment against her, when it becomes due. Specifically, Ms. Swain's argument gives no attention to whether she was actually entitled to indemnity at the time of Matthew's demand under the terms of the policy -- a necessary component of Ms. Swain's bad faith claim based on failure to indemnify.

¶24 An insurer has an implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received. Christian v. American Home Assurance Co., 1977 OK 141, ¶ 8, 577 P.2d 899, 901. Though a bad faith claim sounds in tort, it depends upon a breach of the terms of the policy and deprivation of the policy benefits. This action concerns Ms. Swain's liability coverage. "A liability insurance policy generally contains two basic duties -- the duty to defend and the duty to indemnify its insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland, 1996 OK 105, ¶ 13, 928 P.2d 298, 302-303 (footnote omitted). An insurer's duty to indemnify is determined at the outcome of the third-party action against the insured. Id. ¶ 13, 928 P.2d at 303-04.[21] Specifically, Ms. Swain's liability policy provided that United was obligated "[t]o pay on behalf of the insured, but only to the extent of the applicable policy limits, all sums which the insured shall become legally obligated to pay as damages . . . arising out of the ownership, maintenance, or use of the owned automobile . . . ."[22] The term "legally obligated to pay" is not defined by the policy, but its plain meaning refers to an obligation as a result of judgment or settlement. See SRM, Inc. v. Great Am. Ins. Co., No. CIV-11-1090-F, 2014 WL 12648480, at *12 (W.D. Okla. Jan. 30, 2014); see also 7A Couch on Ins. § 103:14.[23]

¶25 Ms. Swain contends her claim for indemnity accrued at the time United rejected Matthew's claim based on an inapplicable exclusion, or at some point prior to suit. At that time, Matthew had not obtained a judgment against Ms. Swain, and no settlement had been reached. Ms. Swain had not yet been deprived of the indemnity benefit provided by her contract because she had not yet become legally obligated to pay, which United would be obligated to indemnify. Further, even if one were to consider rejection of a pre-suit demand for payment on behalf of the insurer to be a breach of a duty to indemnify, Ms. Swain could not establish she was damaged by rejection of such a demand, before she ever became legally obligated to pay a judgment, and which United ultimately paid before any judgment was entered.

¶26 As previously discussed herein, Oklahoma law and the duties inherent in the insurance contract provide certain protections for one in Ms. Swain's position pre-suit, when an insurer rejects a third-party claim against its insured. Particularly, if Ms. Swain had incurred damage, like an excess judgment for an unreasonable failure to settle the claim pre-suit, then she might have a bad faith claim based on failure to settle. However, Oklahoma law does not provide Ms. Swain an actionable claim based on a failure to indemnify her upon a pre-suit demand. Such a claim is inconsistent with the terms of the policy itself. Additionally, without more, it is inconsistent with other provisions of an insurance policy as well as Oklahoma law, which recognizes that, rather than pay a third-party claim, the insurer usually has the right to contest the insured's liability to a third party or the amount of damages incurred through litigation, with the insured's cooperation, as long as the insured is provided with a defense and indemnity.[24] Ms. Swain's claim, if any, sounds in failure to settle, causing her to be sued. That claim fails because, as explained above, she was never exposed to or subjected to an excess judgment or financial harm caused by the failure to settle.

¶27 We conclude Ms. Swain's argument that her claim is a first-party bad faith action because United failed to pay medical and other expenses to her under her policy of insurance for injury to her third-party unemancipated child is without precedent or merit. Taking the facts in the light most favorable to Ms. Swain, we further conclude that under long-standing, well-established Oklahoma jurisprudence, Ms. Swain failed to prove United breached its obligations under the policy of insurance to provide her a defense and to indemnify her. It is uncontested that United defended Ms. Swain in Matthew's suit against her once made aware of that lawsuit and paid policy limits to Matthew in settlement of that case. Consequently, the trial court erred in denying United's motion for directed verdict.

CONCLUSION

¶28 Ms. Swain's argument that United failed to indemnify her because it denied her coverage prior to suit is without merit and, thus, cannot provide a basis for her claim that United breached its duty of good faith and fair dealing to her. Consequently, we conclude the trial court erred in denying United's motion for directed verdict. Accordingly, we reverse the court's judgment and remand with directions to enter judgment for United.

¶29 REVERSED AND REMANDED WITH DIRECTIONS.

WISEMAN, P.J., and HIXON, J., concur.

FOOTNOTES

[1] She also alleged United was obligated to pay up to $25,000 for property damage and its refusal to pay was a breach of the policy.

[2] In its May 27, 2014 motion to dismiss Ms. Swain's third-party claim, United argued that in her Answer, Ms. Swain denied she was negligent in causing Matthew's injuries; thus, it argued, there was no contractual duty on United's part and, as a result, no bad faith. United also filed a motion to sever and motion to stay discovery. All three motions were denied on January 15, 2015.

[3] The lawsuit had been progressing, including removal of the case to federal court and remand to the state court, and the parties had filed numerous motions and responses and engaged in discovery prior to United's request to file an answer out of time because of inadvertence.

[4] United's position throughout this litigation and on appeal is that this action is based on a third-party claim for insurance proceeds under Ms. Swain's policy of insurance with it. Thus, in its August 14, 2015 motion for summary judgment, United argued the undisputed facts show it provided Mother with defense counsel upon being notified of Matthew's lawsuit against Ms. Swain, the lawsuit was settled, Ms. Swain incurred no "recoverable damages related to the defense of [Matthew's] claims against her." It further argued, she "has no prospects of incurring future damages" because Matthew dismissed his claim against her with prejudice. It argued Ms. Swain's allegation that its pre-suit denial of Matthew's claim was a breach of the insurance contract and constituted bad faith was without merit because even though United "mistakenly" denied the claim as an exclusion under the policy, Ms. Swain "was never in danger of a judgment in excess of policy limits," she "incurred no economic damages related to defense of the case after she gave notice to [United]," and she has paid nothing "towards settlement of [Matthew's] claims."

[5] As exemplified in her objection and response to United's motion for summary judgment, Ms. Swain's position has been that United misled her when Matthew's initial claim was denied because the denial was based on a nonexistent exclusion in the policy of insurance and was an exclusion prohibited under Oklahoma law. Her position has been that the denial of the valid claim made by Matthew caused her loss because she had to pay for his medical bills without the liability fund. She claims she suffered emotional upset and embarrassment because United misled her about the terms of her policy.

[6] United also argues the judgment must be reversed because the trial court erroneously instructed the jury on financial losses despite an absence of evidence of legally compensable damages, and the punitive damages award should be reversed or subject to remittitur. Given our decision and disposition, these other assignments of error are no longer issues presented for our review.

[7] To make out a prima facie case of bad faith, the insured must prove the following: 1) she was covered under the automobile liability insurance policy issued by the insurer and that the insurer was required to take reasonable actions in handling the third-party's claim; 2) the actions of the insurer were unreasonable under the circumstances; 3) the insurer failed to deal fairly and act in good faith toward the insured in its handling of the third-party claim; and 4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by the insured. Badillo, ¶ 25, 121 P.3d at 1093.

An insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." Christian v. American Home Assurance Co., 1977 OK 141, 577 P.2d 899, 901. "An insurer may not treat its own insured in the manner in which an insurer may treat third-party claimants to whom no duty of good faith and fair dealing is owed." Newport v. USAA, 2000 OK 59, ¶ 15, 11 P.3d 190, 196. In dealing with third parties, however, the insured's interests must be given faithful consideration and the insurer must treat a claim being made by a third party against its insured's liability policy "as if the insurer alone were liable for the entire amount" of the claim. See American Fidelity & Casualty Co. v. L.C. Jones Trucking Co., 1957 OK 287, 321 P.2d 685, 687.

Badillo, ¶ 26, 121 P.3d at 1093.

[8] See, e.g., Answer Br. 13, 17-18, 19.

[9] Answer Br. 13. Ms. Swain argues there is a recognized difference between the insurer's duty to settle a third-party claim within policy limits and its duty to defend or indemnify the insured "because the 'conduct and damages' involved in an action for failure to settle 'are different' than those in an action for failure to defend or indemnify," quoting, in part, Morgan v. State Farm Mutual Automobile Insurance Co., 2021 OK 27, ¶ 17 n.3, 488 P.3d 743, 748 n.3 (emphasis omitted). This distinction relates to when breach of the duty of good faith and fair dealing occurs. Thus, she argues United's "bad faith is based on the wrongful deprivation of policy benefits," and its "bad faith accrued when it breached its duty to indemnify; it was not contingent on a subsequent excess verdict or financial loss." Answer Br. 14 (emphasis omitted).

[10] Ms. Swain also argues United's reliance on Milroy v. Allstate Insurance Co., 2007 OK CIV APP 27, 488 P.3d 922, is mistaken because her claim is not one for failure to settle, but rather one for failure to indemnify; thus, her bad faith claim is a first-party claim, and her recoverable damages include mental upset because of United's failure to indemnify her.

[11] For example, in characterizing United's arguments, Ms. Swain states:

United asserts that every bad faith action based on a third-party claim requires an excess verdict or "qualifying" financial loss. United further asserts that liability for a child's medical expenses is not a financial loss of the parent. Accepting United's assertions would mean insurers can, with complete impunity, refuse to defend or indemnify insureds for any reason when there is no excess verdict. And because parents are not liable to their minor children for an excess verdict, United would eliminate bad faith in all cases of a parent and minor child.

Answer Br. 2 (emphasis in original). In a footnote, she continues:

This would mean a parent and minor child have a right to liability insurance proceeds under [Unah], but are not entitled to invoke the protections of the duty of good faith and fair dealing established in Christian v. American Home Assurance Co., 1977 OK 141, 577 P.2d 899. The consequences would be devastating.

Id. at p. 2 n.2 (emphasis added). Without accepting as true Ms. Swain's characterization of United's arguments, her footnote statement that Unah gave the insured/parent and the minor child injured by that parent's negligence a right to the insured/parent's liability proceeds is the platform upon which she builds her theory of liability.

[12] United designated "all Plaintiff's exhibits and demonstrative exhibits, all Defendant's exhibits, and all Court Exhibits, admitted at trial from October 26, 2021 through October 27, 2021." Although designated, the appellate record does not contain the referenced trial exhibits. Of significance to this Court's decision is the absence in the appellate record of the insurance policy submitted at trial. We note that the trial court's instruction on "Bad Faith-Damages" references "the liability insurance policy." Further, the Pre-Trial Conference Order states that Ms. Swain's Exhibit 1 and United's Exhibit 1 are copies of "[United's] insurance policy (including policy declarations) issued to Ms. Swain, No. OKU 20673494." This is the number of the policy, including declarations, attached to United's Motion for Summary Judgment, Exhibits 1 & 3, and Ms. Swain's Motion for Summary Judgment on the Issue of Coverage, Exhibit 1. Consequently, we deem that both parties agree the policy attached to their filings is the policy of insurance submitted to the jury and at issue here.

The original policy declarations and amended policy declarations provide for $25,000 per person and $50,000 per accident; they do not include medical payment coverage. Ms. Swain also declined uninsured motorist coverage.

The Limits of Liability clause of the policy states, in part, as follows:

Regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, vehicles involved in the auto accident, or suits brought, we will pay the limits of liability shown in the Declarations subject to the following:

1. The limit for "each person" is the maximum we will pay for bodily injury sustained by any one person in any one accident, and includes all derivative claims which include but are not limited to loss of society, loss of companionship, loss of services, and loss of consortium.

It further states, "Any amount payable under this coverage to or for an injured person will be reduced by a payment made to that person under medical payments coverage . . . ." Part A-Liability Coverage of the policy provides:

INSURING AGREEMENT:

Bodily Injury Liability or Property Damage Lability. To pay on behalf of the insured, but only to the extent of the applicable policy limits, all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage arising out of the ownership, maintenance or use of the owned automobile or non-owned automobile, and the Company [United] shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

IT IS UNDERSTOOD AND AGREED THAT THE COMPANY HAS NO OBLIGATION TO ANY INSURED AFTER THE APPLICABLE LIMITS OF LIABILITY OF THE POLICY HAVE BEEN PAID, TENDERED OR DEPOSITED IN THE COURT. IT IS FURTHER UNDERSTOOD AND AGREED THAT THE COMPANY'S DUTY TO DEFEND AN INSURED SHALL END WHEN THE APPLICABLE LIMITS OF THE POLICY HAVE BEEN PAID, TENDERED OR DEPOSITED IN THE COURT. . . .

Part B-Medical Payment Coverage provides, in part:

Medical Payments. To pay all reasonable expenses incurred as a result of injuries caused by a covered accident and which are diagnosed within 1 year of the accident and which are reported to the insurer within 3 years of the accident for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulanced, professional nursing and funeral services.

Division 1. To or for the named insured and each resident relative who sustains bodily injury, sickness or disease, including death resulting therefrom hereinafter called "bodily injury" caused by the accident, while occupying or through being struck by an automobile.

The Limits of Liability under Part B provides in part: "The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as a result of any one accident."

[13] As to limits on damages that could be awarded against her in Matthew's lawsuit, we note Ms. Swain filed a motion for partial summary judgment on June 9, 2015, in which she specifically argued the limit of her liability under the parental immunity doctrine was the liability insurance policy limit of $25,000. In that motion, she asserted Matthew refused an offer of these limits in settlement of his claims against her and requested leave of court to deposit the $25,000 with the court clerk and sought dismissal of Matthew's claims against her.

[14] In this regard we note that since the Unah decision, the Court has declined to further abrogate the parental immunity doctrine and allow a minor child to sue his or her parent for injuries the child incurred because of the parent's negligent supervision even though the child was injured on the parent's property and the parent had homeowners' insurance. See Sixkiller v. Summers, 1984 OK 14, ¶ 12, 680 P.2d 360, 362 ("Our limited abrogation of parental immunity in Unah will not be extended to cases involving negligent supervision short of willful misconduct." (footnote omitted)). In declining to extend the exception to the parental immunity doctrine, the Court reasoned:

Although in Unah the existence of compulsory automobile liability coverage was a significant factor, the fact that the appellee-defendant happened to have homeowners' liability coverage does not displace the reasons for preserving immunity in cases of negligent supervision. And, while it is of the greatest interest of the courts to protect rights of children, we note that in the area of parental abuse or neglect the State may intervene through appropriate proceedings to protect the abused or neglected child.

Sixkiller, ¶ 11, 680 P.2d at 362. Also, apparently not significant to the Sixkiller Court is that the negligently supervised minor child of the insured is denied access to the parent's insurance coverage even if other minor children would have access to that coverage if injured on the insured's property. That difference was important to the Unah Court. Both decisions, however, point to a conclusion that the insured's minor child is not elevated to a position superior to other unemancipated third-party claimants.

We are mindful of Ms. Swain's argument that because an unemancipated minor is limited in his or her recovery to the limits of the insured parent's liability insurance, an insurer could engage in all manner of what would otherwise be bad faith conduct against the unemancipated third-party claimant because in no event will the child's recovery or settlement exceed the policy limits; that is, there will be no excess verdict or judgment and the insured parent will thus have no bad faith claim. See Answer Br. 19. While this argument is true in part -- there could be no verdict or judgment in excess of the limits of liability because of parental immunity -- it fails to account for other ways in which the insurer could breach its duty of good faith and fair dealing as to its insured parent and thus be subject to a bad faith claim; that is, for a failure to defend, or to pay damages up to the policy limits. Here, however, once United was notified that Ms. Swain had been sued (a notice it received in her third-party petition against it eighteen months after Matthew filed his lawsuit) it defended her in that action and settled with Matthew for the limits of liability.

[15] See, e.g., Answer Br. 15-16. This conclusion is supported by the numerous actions of bad faith in which Ms. Swain asserts United engaged. Answer Br. 8-13. Accepting this evidence as true, these acts were United's conduct in its handling of a third-party claim. They were the actions that occurred in the negotiation, closing, and ultimate settlement of Matthew's claim against Ms. Swain's liability insurance. The demands for records or other legal documentation, the contracting for and payment of medical expenses of the injured minor must and were legally provided by Ms. Swain as Matthew's parent, but her status as parent of the minor child does not convert the third-party claim to a first-party claim for which she can assert a bad faith claim.

[16] Reply Br. 4-5.

[17] Ms. Swain was legally obligated to provide medical care for Matthew. See, e.g., In re Adoption of C.D.M., 2001 OK 103, ¶ 19, 39 P.3d 802, 809-10 ("Parental obligations entail minimal attributes such as: 1) expression of love and affection for the child; 2) expression of personal concern over the health, education and general well-being of the child; 3) the duty to supply necessary food, clothing, and medical care; 4) the duty to provide adequate domicile; and 5) the duty to furnish social and religious guidance." (footnote omitted)).

[18] Reply Br. 5 (emphasis omitted).

[19] Though Ms. Swain claimed she incurred damages, such as hiring counsel for Matthew or incurring expenses in obtaining his medical records to present to United, expenses Ms. Swain incurred to present a third-party claim on Matthew's behalf to her insurer are not damages caused by her insurer's alleged breach of a duty to indemnify.

[20] Answer Br. 14.

[21] In Turley, the Court discussed the distinction between a duty to defend and indemnify. The insurer's primary duty is to "provide indemnity for loss or to pay a specified amount upon determinable contingencies." Id. (footnote omitted). The duty to defend is broader than the duty to indemnify. That duty does not arise when the insured becomes liable for a judgment. Rather, the duty arises whenever the insurer "ascertains the presence of facts that give rise to the potential of liability under the policy." Id. (footnote omitted). In contrast to a duty of indemnity, "[t]he insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." Id. (emphasis omitted) (footnotes omitted). The mere fact Ms. Swain was not yet owed indemnity did not, as she seems to argue, mean the insurer did not owe her a duty of good faith during its handling of Matthew's claim against her or could treat her just as it pleased until the time of judgment. For instance, if United rejected the claim, and she was sued, Ms. Swain was entitled to a defense. As noted above, if the insurer had the opportunity to settle the claim, and the failure to do so resulted in financial damage to Ms. Swain -- such as exposure to an excess judgment -- that might have been actionable. If the insurer failed to defend Ms. Swain from liability, with notice and opportunity to control the litigation, the insurer would generally be bound by material facts determined in a judgment against her, as relevant to its duty to indemnity her for that judgment. See generally Culie v. Arnett, 1988 OK 134, 765 P.2d 1203; Green v. Circle Ins. Co., 1976 OK 173, 557 P.2d 422 (superseded by statute on other grounds, Prough v. Edinger, 1993 OK 130, 862 P.2d 71).

[22] (Emphasis added.)

[23] Couch notes that, though an insurer's liability is considered triggered by the occurrence of the loss, policies typically impose "some requirement that the insured be accountable for the third party's damages, not merely that the insured have factually been the cause of the damages." Id. "Accordingly, the fact that a loss is occasioned through the fault of the insured does not alone trigger the insurer's liability. A common requirement is that the insured be legally liable for the third party's claim before there is such a loss as the insurer is obligated to pay." Id. (footnotes omitted). Couch states, then, that "[t]he term 'legal liability' as used in a policy of insurance, means a liability such as a court of competent jurisdiction will recognize and enforce between parties litigant," particularly where the policy states coverage is "triggered by the insured's 'liability to pay damages' or words to that effect." Id. (footnotes omitted). In support, Couch cites in part to the Oklahoma Supreme Court's holding in Globe & Republic Insurance Co. of America v. Independent Trucking Co., 1963 OK 274, 387 P.2d 644. There, the Oklahoma Supreme Court interpreted a liability policy's coverage to an insured's "legal liability" for accidental damage to another is a liability "which courts of justice recognize and enforce as between parties litigant therein." Id. ¶ 0, 387 P.2d at 645. Any distinction between the phrase "legal liability" and "legally obligated to pay" appears to be a distinction without a difference, given the plain meaning of both phrases.

[24] Notwithstanding that, as discussed, an unreasonable failure to settle a claim for the protection of an insured can give rise to a claim for breach of the duty of good faith and fair dealing in some circumstances. See, e.g., Badillo, 2005 OK 48, 121 P.3d 1080.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2007 OK CIV APP 6, 151 P.3d 922, 
MILROY v. ALLSTATE INSURANCE COMPANY
Cited

 
2007 OK CIV APP 27, 158 P.3d 1077, 
GILBRAITH v. CLEVENGER
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 134, 765 P.2d 1203, 59 OBJ 3231, 
Culie v. Arnett
Discussed

 
1992 OK 163, 844 P.2d 152, 
Carlson v. City of Broken Arrow
Discussed

 
1993 OK 130, 862 P.2d 71, 64 OBJ 3094, 
Prough v. Edinger, Inc.
Discussed

 
1938 OK 130, 77 P.2d 676, 182 Okla. 330, 
In re MOORE
Cited

 
2001 OK 41, 24 P.3d 858, 72 OBJ 1495, 
GILLHAM v. LAKE COUNTRY RACEWAY
Discussed at Length

 
1954 OK 321, 277 P.2d 676, 
BOYETT v. AIRLINE LUMBER COMPANY
Cited

 
2001 OK 103, 39 P.3d 802, 72 OBJ 3648, 
IN RE ADOPTION OF C.D.M.
Discussed

 
1957 OK 287, 321 P.2d 685, 
AM. FIDELITY & CAS. CO. v. L.C. JONES TRUCKING CO.
Discussed

 
1963 OK 274, 387 P.2d 644, 
GLOBE & REPUBLIC INS. CO. v. INDEPENDENT TRUCKING
Discussed

 
2002 OK 50, 49 P.3d 732, 
COMPUTER PUBLICATIONS, INC. v. WELTON
Discussed

 
2005 OK 48, 121 P.3d 1080, 
BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed at Length

 
1996 OK 105, 928 P.2d 298, 67 OBJ 2941, 
First Bank of Turley v. Fidelity and Deposit Insur. Co. of Maryland
Discussed

 
1976 OK 173, 557 P.2d 422, 
GREENE v. CIRCLE INSURANCE COMPANY
Discussed

 
1977 OK 141, 577 P.2d 899, 
CHRISTIAN v. AMERICAN HOME ASSUR. CO.
Discussed at Length

 
2021 OK 27, 488 P.3d 743, 
MORGAN v. STATE FARM MUTUAL AUTOMOBILE INSUR. CO.
Discussed

 
2000 OK 59, 11 P.3d 191, 71 OBJ 2062, 
Newport v. USAA
Cited

 
1984 OK 2, 676 P.2d 1366, 
Unah By and Through Unah v. Martin
Discussed at Length

 
1984 OK 14, 680 P.2d 360, 
Sixkiller v. Summers
Discussed

 
1984 OK 62, 688 P.2d 1291, 
Independent School Dist. I-29 v. Crawford
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA